UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                                                 Plaintiff

v.                                                                              Case No. 3:15-cr-54-JHM-CHL

OSKEL LEZCANO,                                                                            Defendant

<u>Memorandum Opinion and Order</u>

Attorney Alexander F. Fox filed a motion to withdraw as counsel of record for Oskel Lezcano. Mot., DN 163. Fox indicated that Assistant United States Attorney Joseph Ansari has no objection to Fox's withdrawal. *Id.* at ¶ 1.

Local Criminal Rule 57.6 governs attorney withdrawal in criminal cases. The rule prohibits an attorney from withdrawing within twenty-one days of trial unless a compelling reason exists. LCrR 57.6. Here, the jury trial which had been set for October 12, 2016 has been remanded, and the jury trial will be set at a future date. *See* Order, DN 154.

If an attorney seeks to withdraw any other time, the attorney must file a motion and certify that the motion has been served on the client. LCrR 57.6(b). Here, Fox has filed a motion and certified that he "sent a copy of this Motion to Withdraw to the Defendant" via certified mail. Mot. ¶ 5.

Finally, the rule requires that the attorney make "a showing of good cause." LCrR 57.6(b).

As good cause for the withdrawal, Fox argues that he has had "no contact whatsoever with his client for some time" even though he says he was working to resolve the matter with the government. Mot. ¶ 2. Fox also points to a phone call he received from a probation officer here in the Western District who informed him that a new arrest warrant had been issued for Lezcano,

1

that Lezcano had not reported to the United States Probation Office, and that Lezcano was nowhere to be found. *Id.* Fox argues that Lezcano's fugitive status "makes it impossible for Counsel to represent his interests." *Id.* ¶ 3. Fox also says that his office is in Coral Gables, Florida, a two-hour flight from Louisville. *Id.* Finally, Fox says that he has tried "numerous times" to reach Lezcano, and that he has reached out to his family members to encourage him to turn himself in. *Id.*

> Paragraph four of Fox's motion to withdraw says:
>
> Counsel also respectfully requests, if required, a telephonic hearing *to avoid having to travel to Louisville.* If the Court is unwilling to grant Counsel's request for a telephonic hearing, then Counsel *would request that his colleague Brendan [McLeod] be permitted to stand in* for Counsel as the Ex-Parte hearing.

*Id.* ¶ 4 (emphasis added).

In another case, this request would be unremarkable. Here, in light of Fox's conduct in this matter, it is ironic if not hypocritical.

On July 30, 2015, Lezcano appeared in person in Louisville for his initial appearance and arraignment proceedings. *See* Order 1, DN 35. Brendan McLeod stood in for Fox whom Lezcano had retained as counsel. *See id.* The undersigned remanded Lezcano to the custody of the United States Marshal Service pending a detention hearing. *Id.* at 2. The undersigned set the matter for a detention hearing the following day to determine whether Lezcano would remain in the Marshals' custody pending trial. *See id.*

The next morning, Lezcano appeared before the undersigned for the detention hearing. Order, DN 38. Again, McLeod stood in for Fox as Lezcano's retained counsel. *Id.* McLeod requested on behalf of Mr. Fox a further continuance of the detention hearing for 12 additional days to allow Fox to argue the issue of detention. *Id.* Lezcano indicated his consent to the continuance, and the United States did not object. *Id.*

2

The United States Probation Office had recommended Lezcano's release.

Twelve days later, on August 12, 2015, the undersigned held a detention hearing. Order, DN 47. Fox appeared in person on behalf of Lezcano. The United States moved to withdraw its motion for detention. *Id.* The undersigned released Lezcano on a $100,000 secured bond with conditions. *Id.* After setting the terms of Lezcano's release, the undersigned noted his discomfort with the 12 day delay in conducting the detention hearing. In response, Fox stated, in part, as follows:

> During that time, I had a vacation. I took my three kids on my boat, and we were out of the country for 11 days. The reason it was postponed, if it's anybody's fault, it was my fault because I was outside of the country, and I sure -- I was not going to put the potential of my client getting out on somebody else's lap, meaning that if the hearing had gone badly, I wanted it to be my fault. I don't want to put it on anybody else. I didn't have the chance to speak to my client to see whether or not it was okay for somebody else to stand in.

Draft Hr'g Tr. 10 – 11.

Although McLeod is a respected member of this Court's bar, Fox apparently did not consider him to be an acceptable substitute for purposes of the detention hearing. So while Fox plied international waters on his boat, his client languished in jail. By insisting on his personal appearance at the detention hearing, Fox expended the time, preparation and effort of the Court and everyone else who attended the hearing on July 31. Most importantly, his insistence on his personal appearance at the detention hearing meant that his client spent twelve days in jail unnecessarily.

*Now*, however, Fox is perfectly content for McLeod to argue the issue of Fox's withdrawal from the case, including answering any questions or addressing any concerns the Court may have on the proposed withdrawal. Why the change of heart? Fox says nothing about a newfound confidence in McLeod's ability to communicate effectively with the Court. (The

3

Court emphasizes that it has no such concerns about McLeod's abilities.)  In fact, the only rationale offered is to "avoid [Fox] having to travel to Louisville.  Accordingly, it appears that Fox values his own time over that of the Court, his co-counsel, opposing counsel and, last but certainly not least, his own client.

Notwithstanding the foregoing, the Court is mindful that the Federal Rules of Criminal Procedure call for "simplicity in procedure and fairness [and] . . . eliminat[ing] unjustifiable expense and delay." Fed. R. Crim. P. 2.  Accordingly, the Court will put aside its displeasure with Fox and addresses whether he has shown good cause for withdrawal.

Twice in his motion, Fox represented that he has had "no contact whatsoever" with his client. Mot. ¶¶ 2, 3.  Fox also said that "conflicts" between him and Lezcano have arisen, and "[t]he conflicts include, but are not limited to[,] the fact that Counsel has no contact whatsoever with the Defendant which makes it impossible to represent him, and now that [ ] the Defendant is a fugitive, it makes it impossible for Counsel to represent his interests." *Id.* at ¶¶ 2, 3.

The Court accepts Fox's representations that he has had no contact whatsoever with his client in spite of his efforts to reach out both to his client and his client's family.  No contact with a client for "some time" indicates that the relationship, which requires effective communication, has broken down sufficiently to establish good cause for withdrawal.  Although the Court does not necessarily agree that a client's alleged fugitive status by itself makes it impossible for an attorney to represent the client's interests, an attorney who has had no contact with a client cannot effectively represent the client's interests.

The Court finds that Fox has shown good cause for the withdrawal, and that a hearing on the motion is not necessary.

4

Accordingly, the Court **GRANTS** the motion to withdraw (DN 163).  The Court **DIRECTS** the Clerk of Court to terminate Fox's status as counsel of record in this matter.

cc:  Counsel of record